UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Decade Industries, d/b/a Sanus Systems,

Plaintiff,

v.

Wood Technology, Inc.,

Defendant.

Civil No. 99-1652(DSD/SRN)

**ORDER**

Wood Technology, Inc.,

Plaintiff,

v.

Decade Industries, Inc. d/b/a Sanus Systems,

Defendant.

Civil No. 00-2309(DSD/SRN)

David R. Fairbairn, Esq., Michael J. Pape, Esq. and Kinney & Lange, The Kinney & Lange Building, 312 Third Street South, Minneapolis, MN 55415-1002, counsel for Decade Industries, Inc. d/b/a Sanus Systems.

David J.F. Gross, Esq., Lisa Converse, Esq., Amy M. Gernon, Esq. and Faegre & Benson, LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, counsel for Wood Technology, Inc.

This matter is before the court on: (1) the motion of Wood Technology, Inc. for summary judgment of non-infringement and (2) the motion of Sanus Systems to show cause for contempt by Wood Technology, Inc. of this court's preliminary injunction order.

FILED 5-15-01
FRANCIS E. DOSAL, CLERK
Judgment Ent'd. ____________
Deputy Clerk's Initials ______

Based on a review of the file, record, and proceedings herein, and for the reasons stated, the court denies Wood Technology's motion for summary judgment and grants in part and denies in part Sanus Systems' motion for contempt.

**BACKGROUND**

Sanus Systems ("Sanus"), the business name for Decade Industries, Inc., is a Minnesota company that manufactures stands and other support structures for audio and video equipment. Wood Technology, Inc. ("Wood Tech") is a North Carolina furniture manufacturer. In January 1998, Sanus introduced its new "Mini Stereo System Stand" at the annual Consumer Electronics Show in Las Vegas, Nevada. After an enthusiastic reception, Sanus began marketing the stereo stand at both retail electronic stores and general department stores around the country. It is currently offered for sale in over five hundred retail locations.

On April 23, 1998, Sanus filed a design application with the U.S. Patent and Trademark Office for the design embodied by the Mini Stereo System Stand. After reviewing the application in light of the prior art, the patent examiner issued a notice of allowance. On February 23, 1999, Sanus's application issued as U.S. Patent No. Des. 405,988 (the "D`988" patent).

In January 1999, at the next Consumer Electronics Show, James Wohlford, the president of Sanus and designer of the Mini Stereo

System Stand, noticed a stereo stand on display by Wood Tech. Wohlford believed the Wood Tech stand was a near replica of his soon-to-be patented design. On January 21, 1999, Sanus wrote a cease and desist letter informing Wood Tech about the pending design patent for its Mini Stereo System Stand. Several months later, after Sanus had provided Wood Tech with a copy of the D`988 patent, Sanus learned that Wood Tech was continuing to sell a miniature stereo stand. Although the stand was slightly modified from Wood Tech's earlier design, Sanus still believed that the Wood Tech product (referred to by Wood Tech as the "MS2-ns") was an infringing knock-off of its patented design.

In November 1999, Sanus sued Wood Tech for design patent infringement. Sanus later moved for preliminary injunction and in an order dated June 21, 2000, the court concluded that a jury would be highly likely to find a substantial similarity between the D`988 and MS2-ns stands. The court then preliminarily enjoined Wood Tech from "making, using, selling, or offering for sale any product which infringes" the D`988 patent. (Doc. No. 37, Prelim. Inj. Order at 13.) Sanus now seeks an order of contempt against Wood Tech for Wood Tech's alleged failure to observe the terms of the preliminary injunction. Specifically, Sanus asserts that Wood Tech continued to ship the MS2-ns stand despite the court's prohibition on Wood Tech's use or sale of any product which infringes the D`988 patent.

Meanwhile, Wood Tech has retained new legal counsel and has begun marketing a new mini-stereo system stand, the "MS4.1." Wood Tech claims the MS4.1 is a variation of the MS4 stereo stand first designed by Wood Tech's founder in 1995. On October 13, 2000, Wood Tech filed a declaratory judgment against Sanus, seeking a determination that the MS4.1 does not infringe the D`988 patent. Sanus believes that the MS4.1 represents an insignificant change from the infringing MS2-ns stand, therefore Sanus argues that Wood Tech's decision to market the MS4.1 also constitutes contempt of this court's order. The original lawsuit filed by Sanus and the more recent Wood Tech action have been consolidated and the court now addresses Wood Tech's motion for summary judgment of non-infringement and Sanus's contempt motion.

## DISCUSSION

### I. Wood Tech's Motion for Summary Judgment of Non-infringement

Wood Tech emphasizes that the MS4.1 stand, as its name would imply, is derived from the MS4 stand, an original Wood Tech design which was conceived as early as 1995. (Goff Aff. ¶¶ 4,8.) Sanus argues, however, that Wood Tech's "new design" is at most a colorable alteration from its MS2-ns design, and as such, it unquestionably infringes the D`988 patent. The issue of Wood Tech's source of inspiration ultimately has no bearing on the infringement question because the court's primary task on a design

infringement challenge is to determine whether an ordinary observer would conclude that the two designs, when viewed in their entirety, are substantially the same. Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 990-91 (Fed. Cir. 1993). The Supreme Court long ago articulated the test to be applied on a design patent infringement challenge as this:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

Gorham v. White, 81 U.S. 511, 528 (1872). In addition, the court must determine whether the accused design appropriates the novelty that distinguished the patented design from the prior art. Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444 (Fed. Cir. 1984), overruled in part on other grounds by Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 (1992).

Comparing the design of the MS4.1 to the D`988 patent, the court concludes that an ordinary observer would find a substantial similarity between the two products. As the court detailed in its preliminary injunction order, the D`988 patent captures a number of ornamental elements which in combination produce an entirely original design. These elements include: (1) an overall size that is proportioned to fit a miniature stereo system; (2) an open support system constructed by four independent cylindrical legs,

quadrilaterally positioned, which extend from a base that rests on the ground to a top shelf; (3) shelving that extends outward separately from left and right side legs; and (4) positioning of the left and right shelves so that they extend outward at a height lower than the top shelf. (Doc. No. 37 at 5.) The resultant t-shaped combination of right angles and simple lines grounded in a tubular open support structure creates a modern shelving unit unlike anything found in the prior art.

The MS4.1, like the MS2-ns before it, encompasses these novel elements, individually and in combination, in all material aspects. Its overall dimensions are proportioned to fit a miniature stereo system. It has an open support structure based on four tubular legs grounded in a four-sided base and topped by a four-sided shelf which holds the stereo unit. Finally, each side bears a speaker shelf which extends outward from the support structure at a height lower than the top shelf. The overall visual effect is of a stereo stand design which is substantially similar to the D`988.

The only meaningful difference between the MS2-ns and MS4.1 is that on the MS4.1 stand, Wood Tech replaces the two lower speaker shelves of the MS2-ns with one continuous lower shelf.[1] Wood Tech

---

[1] Wood Tech also argues a number of differences in design which the court has already considered and rejected at the preliminary injunction stage, including: (1) the rectangular base of the Sanus design versus the Wood Tech trapezoidal base and (2) the uniform distance between the front support posts on the Sanus unit, as opposed to the Wood Tech design of positioning the (continued...)

emphasizes this difference, arguing that because the MS4.1 does not incorporate the "floating" speaker shelf design, Sanus cannot establish that the MS4.1 appropriates all the points of novelty that distinguished the D`988 from the prior art.

It is true that under the "point of novelty" test, the accused product must appropriate "those aspects of a design which render the design different from prior art designs." Winner Int'l Corp. v. Wolo Mfg. Corp., 905 F.2d 375, 376 (Fed. Cir. 1990); see also Sun Hill Indus., Inc., 48 F.3d at 1197; Litton, 728 F.2d at 1444. For that reason, the Federal Circuit has instructed that the trier of fact must identify specific novel features and may not identify the overall design of the patented device as its "point of novelty" because such a conclusion would conflate the "point of novelty" and "substantial similarity" tests. Winner, 905 F.2d at 376 (citing Litton, 728 F. 2d at 1444).

However, in focusing so narrowly on the "separate" nature of the D`988's lower shelves, which is merely a single descriptive component contained in only one of the several elements which exist in combination to make the D`988 design unique, Wood Tech overemphasizes not only the significance of that singular feature in the court's construction of the D`988 patent but also the significance of the point of novelty test itself. As the district

---

[1](...continued)
front posts closer to each other to mimic the trapezoidal shape of the base.

court observed in Rubbermaid Comm. Prods. v. Contico Int'l, Inc., 836 F. Supp. 1247 (W.D. Va. 1993):

> There is nothing ... in the Winner holding that suggests that the overall appearance of the design must be disregarded. Indeed, the "ordinary observer" test would preclude such a rule. While the point of novelty approach does command an inquiry into specific elements in the prior art as an initial matter, it does not preclude an analysis of how those elements are combined and integrated into an overall design, and of whether that design has been anticipated. Individual design elements, alone or in combination, may well appear again and again in the prior art, but so long as their ultimate integration into the overall design is novel, the patent is valid as to that combination of design elements. The Winner court's holding thus must be understood only as a caution against uncritical global assessments of a given design. To be sure, the analysis of individual elements disciplines the inquiry into novelty, but it cannot exhaust it. The Braun case, 975 F.2d at 820 & n.7 (citations omitted), indicates as much when it makes clear that the "point of novelty" test is a supplemental one, and that in evaluating a claim of design patent infringement, a trier of fact must consider the ornamental aspects of the design as a whole and not merely isolated portions of the patented design.

836 F. Supp. at 1259.

Even if it were appropriate to cull out an isolated part of a single novel element as a determinative factor in the infringement analysis, the court believes that the dominant feature of the D`988 speaker shelving design is not that the speaker shelves "float" outward as "separate" shelves, but rather that they alone extend outward from the body of the stand to create the unique open t-

frame system for supporting the various stereo components. Wood Tech's choice to extend those shelves inward to the point where they merge into one continuous shelf below the top shelf does alter the open t-frame structure and the overall appearance of the stand to a limited degree, but the court does not believe that the change is significant enough to render the MS4.1 so different from the Sanus design that it escapes the protective scope of the D`988 patent. Accordingly, Wood Tech's summary judgment motion of non-infringement is denied.

**II. Sanus's Motion to Show Cause for Contempt**

Sanus seeks contempt sanctions against Wood Tech, contending that Wood Tech violated the court's preliminary injunction order by continuing to supply the enjoined MS2-ns stand after the order's effective date. Sanus also argues that Wood Tech's decision to market the MS4.1 stand constitutes further violation of the preliminary injunction.

In the context of a patent infringement case, the court must address two primary issues on a motion for contempt of a preliminary injunction: (1) whether contempt is appropriate, which requires a determination that there has been only a colorable change made to the enjoined device, and (2) whether the act complained of constitutes an infringement of the patent. KSM Fastening Sys., Inc. v. H.A. Jones Co., 776 F.2d 1522, 1525 (Fed.

Cir. 1985). The movant bears the burden of proving a violation of a court's order by clear and convincing evidence. Id. at 1524.

With respect to the MS2-ns design, Wood Tech admits that it shipped 125 of these stands to various retailers after the preliminary injunction went into effect. (Goff Aff. ¶ 6.) Wood Tech clearly understood that it was forbidden to make, use, sell or offer to sell the MS2-ns stand, but relying on prior counsel's erroneous advice that completing pre-injunction orders would not constitute "using" or "selling" the product, Wood Tech shipped the orders which had been placed prior to the issuance of the preliminary injunction. The court is mindful of the fact that immediately after Wood Tech obtained new legal counsel, it issued a recall of the 125 stands which had been shipped to various retailers after the preliminary injunction went into effect and was able to recover 57 unsold stands. (Goff Aff. ¶ 7.) However, Wood Tech's initial decision to ship the MS2-ns unit after this court specifically determined that it infringed on the D`988 warrants reprimand. Therefore, the court finds that Wood Tech's continued distribution of the enjoined stereo stand violated the court's preliminary injunction and constitutes contempt of that order.

By contrast, the court disagrees with Sanus that Wood Tech's decision to market the MS4.1 design also violates the terms of the injunction order. Although the court has determined that the MS4.1 stand infringes the D`988 patent, the alteration to the Wood Tech

stand is more than just a colorable change. Rather, the court views the production and marketing of the MS4.1 design and the subsequent declaratory judgment action as a legitimate test of the boundaries of the court's prior construction of the D`988 patent. For that reason, the heavy hand of a contempt sanction is not appropriate. Cf. Mahers v. Hedgepeth, 32 F.3d 1273, 1275 (8th Cir. 1994) ("The contempt power is a most potent weapon, and therefore it must be carefully and precisely employed."); see also California Artificial Stone Paving Co. v. Molitor, 113 U.S. 609, 618 (1885) ("Process of contempt is a severe remedy, and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the defendant's conduct.") Sanus's motion for contempt is therefore denied in this regard.

**CONCLUSION**

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. The motion of Wood Technology, Inc. for summary judgment of non-infringement with respect to the MS4.1 design is denied and judgment in the declaratory judgment action, Civil No. 00-2309(DSD/SRN), shall be entered accordingly.

2. The motion of Sanus Systems to show cause for contempt of this court's preliminary injunction order by Wood Technology, Inc. is granted in part and denied in part.

3. Wood Technology, Inc. shall pay $1,000 to the Clerk of District Court as a sanction for violating this court's preliminary injunction order.

Dated: May 15, 2001

David S. Doty, Judge
United States District Court