UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Decade Industries, d/b/a Sanus Systems,

Plaintiff,

v.

Wood Technology, Inc.,

Defendant.

Civil No. 99-1652(DSD/SRN)

**ORDER**

Wood Technology, Inc.,

Plaintiff,

v.

Decade Industries, Inc. d/b/a Sanus Systems,

Defendant.

Civil No. 00-2309(DSD/SRN)

David R. Fairbairn, Esq., Michael J. Pape, Esq. and Kinney & Lange, The Kinney & Lange Building, 312 Third Street South, Minneapolis, MN 55415-1002, counsel for Decade Industries, Inc. d/b/a Sanus Systems.

David J.F. Gross, Esq., Lisa Converse, Esq., Amy M. Gernon, Esq. and Faegre & Benson, LLP, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, counsel for Wood Technology, Inc.

This matter is before the court on the motion of Sanus Systems to modify this court's order of May 15, 2001 and the motion of Wood Technology, Inc. for an order vacating the May 15, 2001, judgment

FILED 6-25-01
FRANCIS E. DOSAL, CLERK
Judgment Ent'd. 6-25-01
Deputy Clerk's Initials ____

or in the alternative for clarification and express entry of final judgment pursuant to Rule 54(b). Based on a review of the file, record, and proceedings herein, and for the reasons stated, the court grants both motions in part.

## BACKGROUND

In October 1999, plaintiff Sanus Systems ("Sanus") brought suit in federal court alleging that defendant Wood Technology, Inc. ("Wood Tech") was producing and marketing a miniature stereo system stand, the "MS2-ns," which infringed Sanus's patented stereo stand design, U.S. Patent No. Des. 405,988 (the "D'988" patent). In an order dated June 21, 2000, this court granted Sanus's motion for a preliminary injunction and ordered that Wood Tech was preliminarily enjoined from "making, using, selling, or offering for sale any product" which infringes the D'988 patent, including the MS2-ns stand. (Doc. No. 37.)

Following entry of the order, Wood Tech shipped approximately 125 MS2-ns stereo stands which had been ordered prior to the issuance of the preliminary injunction. Wood Tech then advised Sanus of a proposed redesigned stand called the "MS4.1." On September 1, 2000, Sanus informed Wood Tech of its opinion that the MS4.1 also infringed the D'988 patent and as such, any production or distribution of the stand would be deemed by Sanus to be a violation of the court's preliminary injunction order.

On October 13, 2001, Wood Tech filed a declaratory judgment action requesting a determination of whether or not its redesigned MS4.1 stand infringes the D'988 patent. Sanus filed a counterclaim affirmatively alleging that the MS4.1 infringes the D'988 patent. Sanus also claimed that the redesigned stand infringes U.S. Patent No. Des. 429,581, which it also owns by assignment. The declaratory judgment action and counterclaims were subsequently consolidated with Sanus's original infringement action. Sanus then filed a motion for contempt in its infringement case, arguing that the continued shipment of the MS2-ns after entry of the injunction and the production and marketing of the MS4.1 violated the court's June 21, 2000 preliminary injunction. In response, Wood Tech filed a motion in its declaratory judgment action for summary judgment of non-infringement of the D'988 patent.

After conducting a hearing on the contempt and summary judgment motions, the court issued an order dated May 15, 2001, in which it concluded that: (1) the MS4.1 stand infringed the D'988 patent; (2) the continued marketing of the MS2-ns stand after entry of the preliminary injunction in June 2000 constituted contempt of that order; and (3) although the MS4.1 stand infringed the D'988 patent, the redesign was a legitimate attempt to test the boundaries of the court's prior construction of the patent and therefore sanctions were not warranted. Having affirmatively concluded that the MS4.1 stand infringed the D'988 patent, the

court issued judgment against Wood Tech in its declaratory judgment action. (Doc. No. 21.)

Following entry of the order and judgment, Wood Tech sent the court a letter asking the court to clarify whether the June 2000 preliminary injunction order issued in the original infringement action encompassed the MS4.1 stand. In response to Wood Tech's request, Sanus filed a motion to modify the court's May 15, 2001, order to explicitly state in the order that the MS4.1 stand infringes the D'988 patent and is thus subject to the June 2000 preliminary injunction order. In the alternative, Sanus asked the court to enter a permanent injunction in the declaratory judgment action against Wood Tech enjoining further production and marketing of the MS4.1 stand. Wood Tech responded with a motion to vacate the May 15, 2001 judgment pursuant to Fed. R. Civ. P. 60(b)(1), or in the alternative for an order clarifying the order and judgment and certifying the judgment for appeal pursuant to Fed. R. Civ. P. 54(b).[1]

## DISCUSSION

### I. Wood Tech's Motion to Vacate or Clarify

Wood Tech contends that because Sanus never affirmatively moved for summary judgment on Count I of its infringement

[1] The court notes that Wood Tech since has filed a notice of appeal to the Federal Circuit of the May 15, 2001, order in the declaratory judgment action. (Doc. No. 34.)

counterclaim, the entry of judgment against Wood Tech in the declaratory judgment action was improper and the claim of infringement should be preserved for jury trial. Wood Tech also argues that the summary finding of infringement and the entry of judgment against it is inconsistent with the court's ruling on contempt. Specifically, Wood Tech contends that because the court found that the MS4.1 represented more than a just colorable change from Sanus's patented design, there necessarily were substantial issues to be litigated with respect to whether the MS4.1 infringes the D'988 patent, thereby precluding summary judgment in the declaratory judgment action. In support of its position, Wood Tech relies on the Federal Circuit's extensive analysis of contempt proceedings in KSM Fastening Sys., Inc. v. H. A. Jones Co., 776 F.2d 1522 (Fed. Cir. 1985).

In KSM, the Federal Circuit addressed the issue of whether summary contempt proceedings are an appropriate procedural device for resolving an infringement claim against a previously enjoined party. Quoting the Eighth Circuit with approval, the Federal Circuit observed that:

> all subsequent constructions by a convicted infringer are not triable in contempt proceedings. Only where such constructions are merely "colorably" different from the enjoined device or from the patent is the issue so triable. Such constructions may turn out to be infringements, but if they are more than "colorably" different, the issue of infringement must be otherwise determined than by a contempt proceeding .... Where the

> alteration in the device is "merely colorable" and obviously was made for the purpose of evading the decree without essential change in the nature of the device, the courts will try the question of infringement by the new device in proceedings for contempt for violation of the injunction. But where infringement by the new device is not clear on the face of the matter, and there are substantial issues for the determination of the court, the plaintiff may not have them determined in contempt proceedings, but must bring a supplemental bill for an injunction covering the new device, or institute a wholly new suit for such an injunction.

KSM, 776 F.2d at 1530-31 (quoting American Foundry & Mfg. Co. v. Josam Mfg. Co., 79 F.2d 116, 117 (8th Cir. 1935)).

Thus, according KSM, the initial question that a court must ask in a contempt proceeding is whether "substantial disputed issues" exist on the fundamental issue of infringement. Id. at 1532. Otherwise stated, where a court finds that the accused device represents more than a colorable change from the patented design, the issue of infringement may not be decided in a summary contempt proceeding.

This court neither disputes the general standard established in KSM, nor ignores Wood Tech's insistence on it. However, under Wood Tech's logic, KSM effectively restricts district courts to only two choices when adjudicating a contempt motion: impose sanctions or conduct a trial. To the contrary, it is this court's view that the KSM decision represents the Federal Circuit's well-tempered response to its due process concerns about the summary

nature and harsh consequences of contempt proceedings and its concurrent desire to establish a uniform standard which balances the right of the patent owner to enforce an injunction against the right of an enjoined party to design around patent claims without the threat of contempt sanctions at every turn. See, e.g., id. at 1526. The Federal Circuit reflected,

> The question is presented as to how a patentee should be allowed to proceed when following a successful infringement suit the infringer modifies the infringing structure and continues as before. Allowing the patentee to proceed by a summary contempt proceeding in all cases would unnecessarily deter parties from marketing new devices that are legitimately outside the scope of the patent in question. On the other hand, to require in each instance the patentee to institute a new infringement suit diminishes the significance of the patent and the order of the court holding the patent to be valid and infringed. Obviously there must be a dividing point between those cases which should be handled by a summary contempt proceeding and those cases which should be more fully viewed in an infringement proceeding. Courts have uniformly held that the standard to be applied in determining the dividing point is whether the alleged offending device is "merely 'colorably' different from the enjoined device or from the patent."

Id. at 1530 (quoting McCullough Tool Co. v. Well Surveys, Inc., 395 F.2d 230, 233 (10th Cir.), cert. denied, 393 U.S. 925 (1968)(citations omitted)).

The important considerations which underlie the KSM holding are more than satisfied in this case because the question of infringement has, in fact, been fully addressed in the context of

the motion for summary judgment of non-infringement filed by Wood Tech in the declaratory judgment action. In retrospect, the court could have reversed the order of its analysis, first denying Sanus's motion for a summary finding of contempt based on the conclusion that the MS4.1 stereo stand represented more than a mere colorable change from the D'988 design, then finding in the declaratory judgment action that a reasonable juror would certainly conclude that the MS4.1 stand is substantially similar to the D'988 patented design and therefore infringes the patent. However, under either approach, the question of infringement would be fully adjudicated and the court's conclusions would be the same: the MS4.1 stereo stand infringes the D'988 patent as a matter of law, but the stand reflects enough change from the D'988 design that the heavy hand of contempt sanctions is simply not warranted. See Sure Plus Mfg. Co. v. Kobrin, 719 F.2d 1114, 1118 (11th Cir. 1983) ("Even if [defendant's] modified mirror assembly infringes the Sure Plus patent, as long as it is more than colorably different the infringement should not amount to a contempt.")

Wood Tech contends that because Sanus never explicitly moved for summary judgment of infringement on its counterclaim, it (Wood Tech) was deprived of the opportunity to argue against a ruling of summary judgment of infringement. The court respectfully suggests that where the parties submitted 66 pages of briefing primarily on the issue of whether Wood Tech's MS4.1 stand represented a mere

colorable change from the D'988 design or whether it was so different from the Sanus design as to merit a declaratory judgment of non-infringement, Wood Tech has had more than adequate opportunity to present its case against infringement.

As Wood Tech itself concluded in its final reply memorandum, "[t]he only issue relevant to this motion is whether a reasonable juror could find that Wood Tech's new two-shelf stereo stand infringes the three-shelf design claimed in the D'988 patent." (Doc. No. 13, Wood Tech's Reply Mem. at 1.) Because the court found that an ordinary observer could reach no other conclusion, judgment against Wood Tech in the declaratory judgment action was warranted. See Wright, Miller & Kane, Federal Practice and Procedure 3d, § 2720 (observing that summary judgment against a moving party is appropriate even where a formal cross motion has not been filed because "the judge already is engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to support or refute the request for the entry of judgment.")

Wood Tech correctly points out that the court did not explicitly enter summary judgment in favor of Sanus on its counterclaim. To remedy this error and clear any confusion, the court now expressly grants summary judgment to Sanus on its counterclaim of infringement of the D'988 patent in the declaratory judgment action (Count I). The order now clearly represents a

final determination on the issue of whether the MS4.1 stand infringes the D'988 patent. The only claim remaining in the declaratory judgment action is Sanus's assertion in Count II of its counterclaim that the MS4.1 stand also infringes U.S. Patent No. Des. 429,581 ("D'581"). Sanus has provided no indication of its intention with respect to this claim, however, as Wood Tech properly argues, the parties have not briefed and the court has not considered any claim construction or infringement analysis with respect to the D'581 patent. The parties could easily conduct a separate analysis of the D'581 patent, therefore the court sees no reason to delay Wood Tech's appeal of the judgment against it in the declaratory judgment action regarding the D'988 patent.

The court also agrees with Wood Tech that with respect to Sanus's original infringement action, the court can continue to consider the matter separately. The action involves a different product (the MS2-ns) and the court notes that a settlement conference is scheduled for later next month. (Doc. No. 68.) Based on these facts, and on Wood Tech's understandable desire for final resolution of the question of whether the MS4.1 infringes the D'988 patent, the court determines that there is no just reason to delay the entry of final judgment in the declaratory judgment action against Wood Tech and in favor of Sanus on its counterclaim (Count I) and pursuant to Fed. R. Civ. P. 54(b), it is so ordered.

**II. Sanus's Motion to Modify the May 15, 2001 Order**

Finally, Sanus asks the court to state explicitly in its May 15, 2001, order that the MS4.1 stand infringes the D'988 patent and that the MS4.1 is preliminarily enjoined under the court's June 21, 2000 order. Alternatively, Sanus asks the court to issue a permanent injunction in the declaratory judgment action.

Sanus's motion was filed in response to Wood Tech's letter to the court seeking clarification of the effect of the May 15, 2001 order. By virtue of the court's ruling here that judgment shall be entered on Sanus's counterclaim of infringement (Count I), it should now be clear to the parties that the court has determined that the MS4.1 stand infringes U.S. Patent Des. No. 405,988 as a matter of law. Moreover, based on that explicit conclusion and the court's unequivocal direction in the June 21, 2000, preliminary injunction order that Wood Tech is preliminary enjoined from making, using, selling, or offering for sale "any product which infringes U.S. Patent No. 405,988" (Doc. No. 37) (emphasis added), the effect of the May 15, 2001, order on Wood Tech's promotion of the MS4.1 stand should be also be clear. However, because Sanus's prayer for relief on its counterclaim included a request for injunctive relief, (Doc. No. 7, p. 6, ¶ a), the court sees no reason to delay entry of an order permanently enjoining Wood Tech from making, selling or offering for sale any product which

infringes U.S. Patent Des. No. 405,988. Sanus's motion is therefore granted in part.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. The motion of Wood Technology Inc. to vacate this court's order of May 15, 2001 (Doc. No. 26) is denied.

2. The motion of Wood Technology Inc. for clarification of the court's order of May 15, 2001, and for entry of judgment pursuant to Fed. R. Civ. P. 54(b) (Doc. No. 26) is granted.

3. The court's order of May 15, 2001, shall be modified to expressly include entry of summary judgment in favor of Sanus Systems, Inc. on Count I of its counterclaim of infringement in the declaratory judgment action, Civil No. 00-2309. Pursuant to Fed. R. Civ. P. 54(b), this judgment in favor of Sanus, together with the judgment previously entered against Wood Tech, shall constitute the final judgment of the court on the claim of infringement related to the MS4.1 stereo stand and the D'988 patent.

4. The motion of Sanus to modify the May 15, 2001, order (Doc. No. 22) is granted in part.

5. Wood Tech is permanently enjoined from making, using, shipping, selling, or offering for sale the MS4.1 miniature stereo stand, which the court has determined infringes U.S. Patent No. Des. 405,988.

Dated: June 25, 2001

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd